UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Hon. Kevin McNulty |
| | : | |
| v. | : | Criminal No. 14-327 |
| | : | |
| | : | |
| ROBERT CRAWFORD, et al. | : | |

---

**BRIEF OF THE UNITED STATES IN OPPOSITION TO CRAWFORD'S
MEMORANDUM OF LAW IN SUPPORT OF HIS OMNIBUS
MOTIONS AND IN SUPPORT OF THE CROSS-MOTION OF THE UNITED STATES**

---

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Newark, NJ 07102

On the Brief:

BRIAN L. URBANO
Assistant U.S. Attorney

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT…………………………………………………………...1

STATEMENT OF FACTS…………………………………………………………………2

ARGUMENT…………………………………………………………………………...8

POINT I        THE DEFENDANT HAS FAILED TO ALLEGE ANY BASIS FOR AN
               EVIDENTIARY HEARING.……………………………………………8

POINT II       THE GOVERNMENT IS NOT REQUIRED TO PRODUCE A LIST OF
               POTENTIAL WITNESSES………………………………………………..13

POINT III      THE GOVERNMENT WILL PRESERVE ORIGINAL NOTES………………14

POINT IV       THE GOVERNMENT WILL PROVIDE CRAWFORD WITH ALL
               BRADY MATERIAL IN ITS POSSESSION IN A PROMPT AND TIMELY
               MANNER………………………………………………………………..15

POINT V.       THE DEFENDANT'S MOTION REQUESTING THE IDENTITY OF
               CONFIDENTIAL INFORMANTS SHOULD BE DENIED……………...…16

POINT VI       THE DEFENDANT'S REQUEST FOR A HEARING TO DETERMINE
               THE ADMISSIBILITY OF COCONSPIRATOR STATEMENTS
               SHOULD BE DENIED……………………………………………………18

POINT VII      THE GOVERNMENT WILL VOLUNTARILY TURN OVER
               IMPEACHMENT AND JENCKS ACT MATERIAL THREE DAYS PRIOR
               TO TESTIMONY OF SUCH GOVERNMENT WITNESSES…………………19

POINT VIII     THE DEFENDANT SHOULD BE ORDERED TO PRODUCE
               RECIPROCAL DISCOVERY……………………………………….....21

CONCLUSION………………………………………………………………………..22

## PRELIMINARY STATEMENT

On June 6, 2014, a two-count criminal indictment was filed against defendant Robert Crawford  ("Crawford") and codefendants Irving Olivero-Pena ("Olivero-Pena") and Melvin Feliz ("Feliz") for conspiracy to distribute and to possess with intent to distribute more than 5 kilograms of cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846, and for conspiracy to engage in money laundering involving the proceeds of unlawful activity, namely distributing and possessing with intent to distribute a controlled substance, contrary to 18 U.S.C. § 1956(a)(1)(A)(I), in violation of 18 U.S.C. § 1956(h).

This brief is the response of the Government to Crawford's pre-trial motion for early discovery.  (Crawford Motion to Suppress and Memorandum of Law dated October 14, 2014, hereinafter "Def. Mot.")  In his motion, Crawford asks the Court to suppress certain evidence seized by law enforcement from Crawford and his codefendants, to determine the admissibility of coconspirator statements, and to compel early discovery.  This brief responds to each issue below and contains the Government's argument in support of its cross-motion for reciprocal discovery.

**STATEMENT OF FACTS**

A law enforcement investigation revealed that from at least in or about April 2008 through at least on or about January 2011, defendants Feliz, Olivero-Pena, Crawford, and other persons (collectively, the "Drug Trafficking Organization" or "DTO") were coconspirators in a cocaine trafficking and money laundering scheme.  The objective of the scheme was to traffic large quantities of cocaine from California into the New Jersey/New York metropolitan area in exchange for currency.  The ongoing transfer of proceeds of the cocaine trafficking to and among members of the DTO constituted money laundering promoting the underlying specified unlawful activity of cocaine trafficking.

Specifically, in or about October 2012, Drug Enforcement Administration ("DEA") agents in New Jersey learned from a confidential source ("CS"), who has proven credible and reliable in the past that CS was communicating with Olivero-Pena for the purpose of conducting a narcotics transaction.  In summary, the transaction was planned whereby: (1) CS would pick up approximately $550,000 from Olivero-Pena, Crawford, and Feliz in New Jersey; (2) CS would transport the $550,000 via tractor trailer from New Jersey to California and return the money to Crawford in California; (3) CS would wait for Crawford to exchange the $550,000 with associates for 20 kilograms of cocaine and then provide CS with the cocaine; and (4) CS would transport the 20 kilograms of cocaine via tractor trailer from California to New Jersey for distribution by Crawford, Olivero-Pena and Feliz.  At the direction of Olivero-Pena, the money pick up in New Jersey was scheduled for October 22, 2012.

A.   *October 22, 2012 Meeting in New Jersey*

On or about the afternoon of October 22, 2012, at the direction of law enforcement, CS placed an outgoing telephone call to (786) 423-7318 and spoke with Olivero-Pena.  During the ensuing conversation, CS instructed Olivero-Pena to meet him later that same day at a motel in Little Ferry, New Jersey.

At approximately 5:17 p.m., Olivero-Pena arrived at the motel and engaged in a conversation with CS concerning the proposed cocaine transaction.  At approximately 5:45 p.m., Olivero-Pena stated that he wanted to introduce CS to an associate (later identified as Crawford) who would provide CS with money to be transported to California.  Olivero-Pena informed CS that the delivery of the money would take place at a fast food restaurant in Fort Lee, New Jersey.

At approximately 6:00 p.m., at the direction of law enforcement, CS traveled in a taxi cab from the motel to the fast food restaurant.  Once at the restaurant, CS and Olivero-Pena again engaged in a conversation concerning the proposed cocaine transaction.  At approximately 6:30 p.m., Olivero-Pena introduced CS to Crawford and then to his supervisor (later identified as Feliz).  Olivero-Pena stated that Feliz was the leader of the New Jersey drug trafficking organization and that Feliz could "vouch" for Crawford as a reliable member of the New Jersey DTO.  During the ensuing conversation, Feliz advised that he was uncomfortable with delivering the money to CS at the fast food restaurant.  Instead, the conspirators suggested that CS travel by taxi to a restaurant in Englewood Cliffs, New Jersey to receive the money.  When CS rejected the suggestion to travel to another restaurant, Olivero-Pena, Feliz, and Crawford departed the fast food restaurant.

At approximately 7:10 p.m., law enforcement observed Crawford arrive in a blue Jeep Grand Cherokee and Feliz arrive in a black Porsche Cayenne at the residence of Feliz in

Englewood Cliffs, New Jersey.  Law enforcement then observed Crawford and Feliz walk around to the rear of the black Porsche Cayenne and open the rear hatch.

At approximately 7:30 p.m., Olivero-Pena, Feliz, and Crawford returned to the fast food restaurant referenced above.

At approximately 7:40 p.m., Olivero-Pena removed a plastic bag from a gray Jeep Cherokee containing U.S. currency and handed it to CS.  Crawford also removed a weighted roll away suitcase containing U.S. currency from his blue Jeep Grand Cherokee and provided it to CS.  Olivero-Pena and Crawford then placed the roll away suitcase in CS's vehicle.  CS entered the vehicle and departed the area.

Law enforcement determined that the plastic bag provided by Olivero-Pena and the roll away suitcase provided by Crawford contained a combined total of approximately $549,950 in U.S. currency.

*October 27, 2012 Meeting in California*

On or about October 27, 2012, at the direction of law enforcement, CS was present inside room 128 of a motel in Los Angeles, California, waiting for Crawford to retrieve the $549,950 that Crawford was going to use to obtain twenty (20) kilograms of cocaine from members of the DTO.  After Crawford obtained the cocaine, it was expected that he would provide it to CS so that CS could transport the cocaine back to New Jersey hidden inside CS's tractor trailer.

At approximately 2:05 p.m., law enforcement conducting surveillance observed Crawford and an uncharged coconspirator ("UCC") arrive in a white Chevrolet Malibu at the motel in Los Angeles, California.  Crawford then exited the Chevrolet Malibu, opened the trunk, and with one hand, removed a black roll away suitcase.  Crawford closed the trunk and rolled the suitcase to room 128 of the motel.  UCC stayed in the driver seat of the Chevrolet Malibu.

While inside room 128, Crawford engaged in a conversation with CS that was recorded by law enforcement.  During the conversation, Crawford inspected the roll away suitcase that he had provided to CS on the October 22, 2012 meeting.  He then proceeded to inspect the approximate $549,950.  As Crawford removed the packages of U.S. currency, he asked questions about the packaging that the currency was wrapped in and commented about how it did not look the same as when he gave him the packages in New Jersey.  He then counted the packages and stated that there were only 12 packages of money and that one of the packages was missing.  Crawford became irritated and stated that he (Crawford) had to take the money to another location and count it to make sure the proper amount was there.  He then took the packages of currency and placed them in the black roll away suitcase that he had taken from the Chevrolet Malibu.

At approximately 2:10 p.m., law enforcement observed Crawford exit room 128 with the black roll away suitcase, which now appeared heavy.  Crawford pulled the black roll away suitcase to the trunk area of the Chevrolet Malibu, and using both hands lifted the suitcase and placed it in the trunk of the vehicle.  Crawford then entered the Chevrolet Malibu and UCC then drove out of the parking lot.

At approximately 2:42 p.m., law enforcement conducted a traffic stop of the Chevrolet Malibu.  In response to routine questions, Crawford and UCC provided several inconsistent answers.  Both individuals provided verbal and written consent to search the vehicle and its contents.  A K-9 unit then alerted law enforcement to the presence of narcotics in the black roll away suitcase.  Inside the suitcase, law enforcement located the packages containing U.S. currency.  Law enforcement seized an additional $10,180 in U.S. currency found inside

Crawford's pocket.  Crawford and UCC denied ownership of all the money seized by law enforcement.

Based upon the evidence stated above, among other things, law enforcement arrested Crawford and Olivero-Pena on March 10, 2014 and Feliz on March 11, 2014.

More specifically, on March 10, 2014, at approximately 10:40 a.m., law enforcement arrested Crawford while near his apartment with his youngest daughter.  He gave verbal and written consent to enter and search his apartment at 50-01 2nd Street, Apt. 810E, Long Island City, New York.  He was asked if he had anything illegal in his apartment, and he responded that he had money in the dishwasher.  Inside the dishwasher, law enforcement discovered approximately 475 grams of cocaine.  Crawford told the agents there was money in the dishwasher instead of cocaine because he did not want his daughter to know that he had drugs in the house.  The search also revealed 12.7 grams of cocaine taken from the closet, approximately $80,000 in U.S. currency, an Audemar Piguet wrist watch (appraised at approximately $35,000), 2 rolls of saran wrap and 3 rolls of heat sealer bags, one package of dryer sheets, a digital scale, a kilogram press, a money counter, a Macbook computer, and four cellular telephones.  Law enforcement also seized a white Porsche Panamera, black Range Rover, and a black Jeep Cherokee.  Inside the Range Rover, law enforcement seized one white wireless GPS detector.  Inside the white Porsche Panarama, law enforcement seized a black and yellow Ghost Israel GPS detector.

On or about June 6, 2014, a two-count criminal indictment was filed against defendant Melvin Feliz, Olivero-Pena  and Crawford for conspiracy to distribute and to possess with intent to distribute more than 5 kilograms of cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846, and for conspiracy to

engage in money laundering involving the proceeds of unlawful activity, namely distributing and possessing with intent to distribute a controlled substance, contrary to 18 U.S.C. § 1956(a)(1)(A)(I), in violation of 18 U.S.C. § 1956(h).

On or about June 27, 2014 and on or about July 3, 2014, pursuant to Fed. R. Crim. P. 16, the Government provided Crawford with, among other things, law enforcement reports memorializing the arrest of Crawwford, Crawford's criminal case history, compact disks of surveillance involving Crawford, audio recordings, and photographs.  In addition, the Government notified Crawford of other discovery materials that were available for defense inspection.

On or about July 15, 2014, the Government provided Crawford with the lab reports for cocaine seized during the investigation.

On or about September 3, 2014, the Government provided Crawford with photographs of a hidden compartment discovered in Crawford's vehicle as well as arrest and statement reports (which had been previously provided on July 3, 2014).

On or about October 7, 2014, the Government provided Crawford with an inventory of items seized in the case, one compact disk of a body wire containing conversation between a confidential source and Olivero-Pena, and a compact disk containing Crawford's financial documents.

On or about October 9, 2014, the Government provided Crawford with a compact disk containing recorded calls between a confidential source and Olivero-Pena and a compact disk containing financial documents of Crawford.

On or about October 17, 2014, the Government provided Crawford, Feliz, and Olivero-Pena with a copy of the search warrant affidavit for telephones seized by law enforcement in this case.

On or about October 23, 2014, the Government provided Crawford with a compact disk containing toll records of Crawford's phone from September 24, 2012 through October 23, 2014.

On or about October 30, 2014, the Government provided Crawford with a compact disk containing a telephone call of Irving Olivero-Pena from November 2012 and a compact disk containing toll records of Crawford's phone from February 11, 2014 through March 12, 2014.

## ARGUMENT

## POINT I

## THE DEFENDANT HAS FAILED TO ALLEGE ANY BASIS FOR AN EVIDENTIARY HEARING

A.      The Defendant Has Failed To Submit Any
        Supporting Affidavits, And His Motion
        To Suppress Should Be Denied On This
        Basis Alone, Without An Evidentiary Hearing

Crawford did not submit any affidavits in support of his motion to suppress evidence and to suppress his statements made to law enforcement. (Def. Mot. at 2-3). His motion should be denied on this basis alone, without an evidentiary hearing.

In United States v. Stoddart, 48 Fed.Appx. 376, 380-81 (3d Cir. 2002), available at 2002 WL 31260988, *4 (not precedential), the Third Circuit affirmed the district court, which had denied a defendant's motion to suppress without holding an evidentiary hearing. The Third Circuit noted that "[t]he District Court denied the motion and refused to hold a hearing as [the defendant] had not submitted any affidavits or other evidence that the search was illegal, but

rather argued that the Government should be held to its proof." <u>Id.</u>   The Third Circuit, like the district court, rejected that argument, holding:

> A district court may deny a motion to suppress without a hearing when the defendant fails to provide a factual basis for the hearing and merely relies upon the Government's burden of proof .... [The defendant] did not submit an affidavit or testimony setting forth the basis for the requested hearing but merely stated that because the stop was warrantless, the Government had the burden of showing that the stop was justified.  Under the circumstances, the District Court did not abuse its discretion in denying a hearing on the motion to suppress.

<u>Id.</u> (internal citations omitted).  The Third Circuit went on to affirm the district court's denial of the defendant's suppression motion, concluding that on the face of the papers it was clear that the police had reasonable suspicion to stop the defendant.  <u>Id.</u>

Similarly, in <u>United States v. Chambers</u>, 47 Fed.Appx. 85, 90-91 (3d Cir. 2002), available at 2002 WL 31059148, **3-4 (not precedential), the Third Circuit affirmed the district court's denial of a defendant's suppression motion without an evidentiary hearing.  The Third Circuit found that [the defendant's] motion simply contained unsupported claims by his lawyer and held that "'[m]ere bald-faced allegations of misconduct' such as these do not merit evidentiary hearings." <u>Id.</u> (quoting <u>United States v. Voigt</u>, 89 F.3d 1050, 1067 (3d Cir. 1996)).

The Third Circuit's requirement that the defendant come forth with a supporting affidavit in order to merit an evidentiary hearing is in accord with those of other courts.  <u>See, e.g.</u>, <u>United States v. Rollins</u>, 862 F.2d 1282, 1290-91 (7th Cir. 1988) ("Neither of [the defendant's] two pretrial motions to suppress contained any statement of the facts surrounding his arrest, cited any authority supporting his fourth amendment argument, or were supported by affidavits or other evidence ... As a result, the district court refused to hold an evidentiary hearing ... Because [the defendant] has not met the burden of establishing the necessity of an evidentiary

hearing, we conclude that the district court did not err when it denied [his] motions to suppress without conducting an evidentiary hearing"); United States v. Guadalupe, 363 F.Supp.2d 79, 81 (D. Conn. 2004) ("Suppression of evidence is not appropriate merely upon a defendant's conclusory, non-particularized allegations of unlawful official behavior.  To justify a hearing, an affidavit of someone with personal knowledge of the underlying facts must be submitted.  A defense attorney's declarations are insufficient to meet this burden") (internal citations omitted); United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993) ("In order to raise a factual issue concerning the validity of a seizure such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge .... their motions to suppress fail on this ground alone") (internal citations omitted) (collecting cases), aff'd, 44 F.3d 1102 (2d Cir. 1995).

Because Crawford failed to submit an affidavit in support of his motion to suppress, this Court should deny his motion on this basis alone, without an evidentiary hearing.

> B.   The Defendant Has Failed To Raise Any
>      Material Factual Disputes, Requiring Denial
>      Of His Motion Without An Evidentiary Hearing

Separate and apart from the fact that Crawford failed to submit any supporting affidavits, his motion to suppress should be denied without an evidentiary hearing because he failed to even allege a violation of his constitutional rights in his moving brief.

The defendant bears the burden of establishing the necessity of an evidentiary hearing on a motion to suppress.  United States v. Acosta, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992).  The court shall conduct an evidentiary hearing only when the defendant's moving papers demonstrate a "colorable claim" for relief.  Voigt, 89 F.3d at 1067.  In order to be colorable, the defendant must do more than merely allege that a constitutional violation has occurred; the

10

defendant must allege issues of fact material to the resolution of his constitutional claim.  Id.; see also United States v. Persinger, No. 06-4902, 2008 WL 2766154, *2 (3d Cir. 2008) (not precedential) ("A district court is not always obligated to conduct an evidentiary hearing in conjunction with a motion to suppress, but need only do so if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome") (internal quotations and citations omitted); United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) ("It is apodictic that a criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he deigns to file ... the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief") (internal citations omitted); United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995) (finding that the defendant's burden "can only be met upon the presentation of definite, specific, detailed, and nonconjectural facts") (internal quotations and citations omitted).  A district court may deny a motion to suppress without a hearing if the motion fails to meet this standard.  Voigt, 89 F.3d at 1067-68.

  For example, the Third Circuit affirmed the district court's denial of a defendant's suppression motion, without an evidentiary hearing.  In United States v. Jihad, 159 Fed.Appx. 367, 369-70 (3d Cir. 2005), available at 2005 WL 3409624, **1-2 (not precedential), the Third Circuit noted that the defendant "did not allege that any violation of constitutional rights had occurred, nor did he contend that there were disputed facts with respect to his claim."  The Third Circuit quoted heavily from the defendant's moving brief, which stated that:

> The basis of the information which led to the stop of Mr. Jihad needs to be *more fully explored*.  The precise information relied upon by the dispatched police officers is *unclear*.  It is *not certain* how much time elapsed between the initial report and the subsequent "stop" of Mr. Jihad. [T]he circumstances regarding the actual seizure of the firearm is [sic] *plainly confusing*.  There is no way to determine if the firearm was taken from the person of Mr. Jihad or recovered in another manner.  There is no effort made to describe the search of Mr. Jihad, if

any, made by police officers.  A hearing is necessary to *more fully develop* these issues.

Id. (quoting defendant's moving brief) (emphasis added).  The Third Circuit held that such

arguments are patently insufficient to merit an evidentiary hearing:

> Such assertions do not identify a specific issue of material fact that is in dispute. There is no allegation that the officers engaged in an illegal search or otherwise obtained the concealed weapon illegally.  Accordingly, on the basis of Jihad's moving papers, we are unable to ascertain any material issue of fact for the District Court to resolve at an evidentiary hearing.

Id. (emphasis added).

Crawford  makes similar arguments as did the defendant in the Jihad case.  (See

Def.'s Mot. at 2 ("It is *unclear* as to all the evidence that was seized in this case by law

enforcement officers…From the information provided by the Government, it appears that some

items taken in this case were seized with and without a warrant…a hearing should be held to

determine the validity of the seizure of any of the items that will be used as evidence in this

trial"). (emphasis added).)  Nowhere does Crawford even allege - must less set forth with the

required specificity - that he did not consent to the search of his apartment and his vehicles or

that he did not freely make statements to the officers, or that the officers somehow violated his

constitutional rights.  Because Crawford does "not identify a specific issue of material fact that is

in dispute," and does not allege "that the officers engaged in an illegal search or otherwise

obtained any evidence illegally," this Court should find, like the Third Circuit in Jihad, that there

are no material issues of fact to resolve at an evidentiary hearing.  See Jihad, 159 Fed.Appx. at

369-70; see also United States v. Moodie, No. 00-156, 2000 WL 776910, **2-3 (S.D.N.Y. 2000)

(denying motion to suppress firearm without an evidentiary hearing because the defendant "has

not challenged the recital of facts ... concerning the search and seizure of the gun").

C.   An Evidentiary Hearing On The
Defendant's Motion Would Only
Serve As An Improper Discovery Tool

Denial of a suppression hearing is appropriate when no claim of a constitutional

violation is before the Court, since such a hearing becomes merely a discovery device.  United

States v. Harrelson, 705 F.2d 733, 738 (5th Cir. 1983) ("Hearings on motions to suppress are not

discovery proceedings, but are instead designed for the presentation of evidence in support of

factual allegations which, if proven, would justify the relief sought"); see also United States v.

Migely, 596 F.2d 511, 513 (1st Cir. 1979) (affirming denial by district court of request for an

evidentiary hearing as well as motions to suppress and for further discovery, when district court

indicated that defendant was on a fishing expedition).

Far from alleging that any constitutional violations had occurred, Crawford uses

his motion and request for an evidentiary hearing merely to seek clarification of the events

surrounding [his] arrest.  (Def. Mot. at 2-3).  As a participant in all the events in question, the

defendant already possesses this information.  Without any disputed material factual issues to

resolve, an evidentiary hearing would only serve as an improper discovery tool, giving the

defendant access to the testimony of Government witnesses to which he is not otherwise entitled

prior to trial pursuant to Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3500.

As such, Crawford's motion and request for a hearing should be denied.

## POINT II

**THE GOVERNMENT IS NOT REQUIRED TO PRODUCE A LIST OF
POTENTIAL WITNESSES**

Crawford requests that the Government provide pretrial disclosure of the identity of all

witnesses it intends to use at trial.  (Def. Mot. at 3).  This Court should deny that motion.

13

The law in this Circuit is clear that "the discovery rules do not permit the defense to get the names of witnesses." United States v. Mitchell, 540 F.2d 1163, 1166 (3d Cir. 1976); accord United States v. Casseus, 282 F3d. 253, 257 (3d Cir. 2002); Government of the Virgin Islands v. Martinez, 847 F.2d 125, 128 (3d Cir. 1988); United States v. DiPasquale, 740 F.2d 1282, 1294 (3d Cir. 1984).  Indeed, in United States v. Addonizio, 451 F.2d 49, 62 (3d Cir. 1971), the Third Circuit stated flatly that "in no event is the Government required to divulge the identity of its witnesses in a non-capital case."

## POINT III

### ORIGINAL NOTES WILL BE PRESERVED

Crawford requests that the Government preserve agents' "rough notes," drafts of reports, and the final reports prepared in this case.  (Def. Mot. at 4-5).  The Government is aware of and will comply with its obligations to preserve rough notes under United States v. Vella, 562 F.2d 623, 627 (3d Cir. 1976), cert. denied, 429 U.S. 1104 (1977), and therefore defendant's motion to compel the Government to do so is moot and should be denied.  To the extent that Crawford requests that the Government disclose such notes, the Government notes that it is not required to disclose rough notes and draft reports prepared by investigators merely upon the defendant's demand.  United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Muhammad, 120 F.3d 688, 699 (7th Cir. 1997).  The federal agents involved in the prosecution of this case have been advised of their obligation to preserve notes of interviews and handwritten drafts of reports.  If directed by the Court to do so, the Government will submit those materials to the Court for in camera review and possible disclosure to the defense.  See United States v. Ammar, 714 F.2d 238, 259 (3d Cir. 1983) ("the Government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to

14

facilitate the district court's determination whether they should be produced"); <u>United States v.</u>

<u>Vella</u>, 562 F.2d 275, 276 (3d Cir. 1977) (F.B.I. agent's rough notes should be kept so that the

trial court can determine whether they contain <u>Brady</u> or Jencks Act material).

**POINT IV**

**THE GOVERNMENT WILL PROVIDE CRAWFORD WITH ALL
BRADY MATERIAL IN THE GOVERNMENT'S POSSESSION IN A
PROMPT AND TIMELY MANNER**

Crawford has requested that the Government disclose all exculpatory information

pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (Def. Mot. at 5 and 8-9).  The Government

understands its <u>Brady</u> obligations, <u>see id.</u> at 87 ("suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"), and will

comply fully with them.  Thus, the Government will disclose to defense counsel all exculpatory

evidence in its possession that is material to guilt promptly and in sufficient time for its use at

trial, and all information that is material to punishment prior to sentencing.  <u>See United States v.</u>

<u>Johnson</u>, 816 F.2d 918, 924 & n.7 (3d Cir. 1987) (Government should turn over Brady material

"in a prompt fashion," but no <u>Brady</u> violation occurs where defendant has the evidence

"available during the course of a trial in such a way that [he] is able effectively to use it");

<u>United States v. Rittweger</u>, 524 F.3d 171, 180 (2d Cir. 2008) ("Brady information . . . must be

disclosed in a manner that gives the defendant a reasonable opportunity either to use the

evidence in the trial or to use the information to obtain evidence for use in the trial") (internal

quotation marks and citation omitted).

15

At the present time, the Government is not in possession of, nor is it aware of, any exculpatory information.  If the Government discovers any such material exculpatory information, it will turn it over to defense counsel in a prompt and timely manner.

## POINT V

### THE DEFENDANT'S MOTION REQUESTING THE IDENTITY OF CONFIDENTIAL INFORMANTS SHOULD BE DENIED

Crawford requests that the Government disclose the identity of any confidential informants who were employed in the Government's investigation of the charged crimes in this case.  (Def. Mot at 6).  The Government has a privilege which permits nondisclosure of informants, but that "privilege must give way '[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  United States v. Jackson, 384 F.2d 825, 827 (3d Cir. 1967), quoting Rovario v. United States, 353 U.S. 53, 60-61 (1957).

A defendant requesting the disclosure of information concerning a confidential informant bears the burden of showing a specific need justifying the disclosure.  United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981); United States v. Roberson, 439 F.3d 934, 940 (8th Cir. 2006).  Crawford has not satisfied that burden here.

In Roviaro v. United States, 353 U.S. 53 (1956), the Supreme Court, recognizing the Government's need to protect the identity of persons who provide information to law enforcement officers, held that there is a qualified privilege preventing disclosure based upon the public's right to, and the legitimate law enforcement interest in, information provided by informants.  However, the Court noted that "[w]here the disclosure of an informant's identity, or

16

of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [against disclosure] must give way."  Id. at 60-61.  There is "no fixed rule with respect to disclosure," rather this court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense."  Id. at 62.

Crawford has not set forth any facts that would satisfy his burden of demonstrating a particular need justifying disclosure.  As the Third Circuit has noted:

> In most situations the accused will demand disclosure in the hope that the informer's testimony can substantiate his defense.  But if disclosure or a mere supposition is required in every instance the interests of law enforcement in combatting [crime] will be detrimentally affected by the emasculation of its only effective weapon the informer.

Jiles, 658 F.2d at 197, quoting United States v. Day, 384 F.2d 464, 469 (3d Cir. 1967) (McLaughlin, J., concurring); see also United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983) (en banc) ("mere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity).

Because the defendant has not satisfied his burden of demonstrating a specific need for disclosure of the identity of any confidential informant, his motion to compel such disclosure should be denied.

Indeed, Crawford has not set forth any facts demonstrating a particular need for such disclosure.  The defendant merely states the conclusion that the defense needs this information to "question the witness" and check the informant's credibility.  (Def. Mot. at 6).  This is precisely the type of rank, unsubstantiated speculation that courts properly and necessarily reject as a basis for disclosure.  "[M]ere speculation as to the usefulness of the informant's testimony to the

defendant is insufficient to justify disclosure of his identity." <u>United States v. Bazzano</u>, 712 F.2d 826, 839 (3rd Cir. 1983) (en banc), <u>cert</u>. <u>denied</u>, 465 U.S. 1078 (1984); <u>accord</u> <u>United States v. Estrella</u>, 567 F.2d 1151, 1153 (1st Cir. 1977).  The rationale is clear:  "[I]f disclosure on a mere supposition is required in every instance, the interests of law enforcement in combatting [crime] will be detrimentally affected by the emasculation of its only effective weapon--the informer." <u>United States v. Day</u>, 384 F.2d 464, 468 (3rd Cir. 1967).

Because Crawford has not satisfied his burden of demonstrating a specific need for disclosure of the identity of any confidential informants that might exist in this case, his motion to compel disclosure of the identity of confidential informants should be denied.

## POINT VI

### THE DEFENDANT'S REQUEST FOR A HEARING TO DETERMINE THE ADMISSIBILITY OF ANY COCONSPIRATOR STATEMENTS SHOULD BE DENIED

Although  the Government is not required to disclose the identities of any unindicted co-conspirators that may exist in this case,  the Government has disclosed, through audio and video recordings, persons with whom the defendant has dealt in connection with the conspiracy. Accordingly, the defendant has more than adequate notice of the possible unindicted co-conspirators.  Similarly, the Government is not required to identify co-conspirator statements that it intends to use at trial at this early stage.  Nevertheless, the Government has already provided the defense with discovery that contains statements the Government intends to introduce at trial. It is clear that the defendant has all the information to determine for himself who is a co-conspirator and which statements are co-conspirator statements.

18

**POINT VII**

**THE GOVERNMENT WILL VOLUNTARILY TURN OVER
IMPEACHMENT MATERIAL AND JENCKS ACT
MATERIAL THREE DAYS PRIOR TO TESTIMONY OF
EACH GOVERNMENT WITNESS**

Crawford requests impeachment material that must be disclosed pursuant to Giglio v.

United States, 405 U.S. 150 (1972), and its progeny. (Def. Mot. at 6)   Giglio requires the

Government to "disclose evidence that goes to the credibility of crucial prosecution witnesses."

Buehl v. Vaughn, 166 F.3d 163, 181 (3d Cir. 1999).  This information typically includes, for

example, immunity agreements, plea agreements, money paid to a witness, and prior criminal

convictions.  The Government understands its Giglio obligations and will comply with them

fully.  The Government intends voluntarily to disclose all Giglio information to the defendant at

least three days prior to the testimony of each witness.

A defendant has no right to pretrial disclosure of impeachment material.  United States v.

Higgs, 713 F.2d 39, 44 (3d Cir. 1983); see also United States v. Ruiz, 536 U.S. 622, 629 (2002)

(the Constitution does not require the Government to disclose impeachment information prior to

a defendant's guilty plea).  The Government nevertheless recognizes the interest of the Court and

all parties in conducting the trial efficiently and without interruptions.  The Government

proposes to disclose all Giglio material at least three days prior to the testimony of each witness.

This timetable will ensure that defendant's due process right are protected.

In addition, the defendant seeks early production of prior statements and reports of

Government witnesses.  (Def. Mot. at 8-9).  The Jencks Act, 18 U.S.C. § 3500(a), provides that,

"[i]n any criminal prosecution brought by the United States, no statement or report in the

possession of the United States which was made by a Government witness . . . shall be the

subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Thus, disclosure of a Government witness' prior statements or reports is not required until after the witness has testified. As the Third Circuit stated in United States v. Murphy, 569 F.2d 771 (3d Cir. 1978):

> The blunt command of the statute together with the unequivocal legislative history has led to unbroken precedents in the Courts of Appeals denying to district courts the power to compel production of the statements of Government witnesses until conclusion of direct examination at trial.

569 F.2d at 773; accord United States v. Merlino, 349 F.3d 144, 155 (3d Cir. 2003); United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001).

The Government, however, recognizes the "salutary practice" of "delivering Jencks material to defense counsel sufficiently in advance of the conclusion of direct examination to obviate trial interruptions." Murphy, 569 F.2d at 773 n.5. As a result, the Government voluntarily will produce Jencks material at least three days prior to the testimony of each Government witness. This early disclosure will afford defense counsel an adequate opportunity to prepare for cross-examination without delaying the trial. The defendant has a reciprocal duty to produce to the Government prior statements of its witnesses. See Fed. R. Crim. P. 26.2. In light of the Government's willingness to produce Jencks material prior to the testimony of its witnesses, the Government requests that defense counsel reciprocate by providing defense Jencks material at least three days in advance of the testimony of defense witnesses. If the defendant declines to use the same timetable for his required disclosures, the Government expects that the defendant will notify the Government and the Court at least one week prior to the beginning of trial, so the Government can reconsider its offer of voluntary early disclosure of Jencks material.

## POINT VIII

### THE DEFENDANT SHOULD BE ORDERED TO PROVIDE RECIPROCAL DISCOVERY TO THE GOVERNMENT

The right of the United States to reciprocal discovery is firmly established in the language of Rule 16(b)(1)(A) and (B) of the Federal Rules of Criminal Procedure.  The former provision allows the Government, upon complying with a legitimate request by a defendant for similar material, to "inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial."  Fed. R. Crim. P. 16(b)(1)(A).  Under the clear language of this rule, courts uniformly have allowed reciprocal discovery.  See e.g., United States v. Bump, 605 F.2d 548, 551-52 (10th Cir.1979) (requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); United States v. Sherman, 426 F. Supp. 85, 93 (S.D.N.Y. 1976).

To date, the United States has not received any discovery from Crawford.  Because discovery has been made available to the defendant, the United States is entitled, pre-trial, to reciprocal discovery under Fed. R. Crim. P. 16(b), and the Court should so direct the defendant. See United States v. Blackwell, 954 F. Supp. 944, 970-71 (D.N.J. 1997).

## <u>CONCLUSION</u>

Therefore, Crawford's motions for early discovery should be denied.  The Government's cross-motion for reciprocal discovery should be granted

Respectfully Submitted,

PAUL J. FISHMAN
United States Attorney


s:/Brian L. Urbano
By: Brian L. Urbano
Assistant U.S. Attorney

Dated: November 17, 2014
Newark, New Jersey.